NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

CEPHALON, INC., :
:
        Plaintiff, : Civil Action No. 11-5474
:
v. : OPINION
:
SUN PHARMACEUTICAL INDUSTRIES, :
INC. and SUN PHARMACEUTICAL :
INDUSTRIES, LTD., :
:
        Defendants. :
_____ :

      Presently before the Court is a motion by Sun Pharmaceutical Industries Ltd. ("Sun India") to Dismiss the Complaint for Insufficient Process pursuant to Fed. R. Civ. P. 12(b)(5) by Sun Pharmaceutical Industries Ltd. ("Sun India"). This motion arises out of a Complaint filed by Cephalon Inc. ("Plaintiff" or "Cephalon") against Sun India and Sun Pharmaceutical Industries, Inc. ("Sun USA") (collectively "Defendants") in which Cephalon avers that Defendants, the manufacturers of generic pharmaceutical products, intend to immediately launch a generic copy of Gabitril, Cephalon's tiagabine hydrochloride tablet, that infringes Cephalon's U.S. Patent No. 5,958,951 ("the '951 patent") prior to its expiration in June 2017. For the reasons set forth below, the Court finds that service on Sun India in New Jersey was insufficient; however, rather than dismissing the Complaint against Sun India, the Court will exercise its discretion under Fed.

R. Civ. P. 12(b)(5) to quash service on Sun India in New Jersey and will, instead, permit Plaintiff to proceed in serving Sun India pursuant to the Hague Convention.

**I. BACKGROUND**

Cephalon is a Delaware corporation with its principal place of business in Pennsylvania. Sun India is a corporation operating and existing under the laws of India with its principal place of business in Mumbai, India. Sun USA is a Michigan corporation with its principal place of business in Cranbury, New Jersey.

Cephalon is the owner of the '951 patent and holder of a NDA for Gabitril tablets in 2 mg, 4 mg, 12 mg and 16 mg dosage forms containing tiagabine hydrcholoride. Gabitril is a prescription drug used as an anti-epilepsy agent. By letter dated April 15, 2005, Sun India notified Cephalon that it had filed ANDA No. 77-555 seeking FDA approval to market tiagabine hydrocholoride tablets in the 2 mg and 4mg dosage strengths. Compl. ¶ 8. In addition, the letter alleged that claims 1-2 and 4-7 of the '951 patent are invalid.

On September 21, 2011, Cephalon filed a complaint alleging infringement of the '951 patent. In its Complaint, Cephalon avers that the FDA has given Sun India tentative approval for ANDA No. 77-555 to market, offer for sale and sell the tagabine hydrocholride tablets in the Untied States. Thus, Cephalon contends that on information and belief, Defendants intend to market and sell the Sun generic tablets before the expiration of the '951 patent on June 10, 2017.

On October 14, 2011, both Defendants were served at Sun USA's Cranbury facility.

**II. STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a complaint may be dismissed for insufficient service of process.  "However, where service of process is found to be ineffective, the court has discretion to either dismiss or quash service which has been made." Dimensional Communications, Inc. V. OZ Optics Ltd., 218 F. Supp. 2d 653, 655 (D.N.J. 2002).  "A motion to dismiss under Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process contends that the Defendant did not receive sufficient notice of the action as set forth in Rule 4."  Petsinger v. Pa. DOT, 211 F. Supp. 2d 610, 611 (E.D. Pa. 2002).   The burden is on the party serving process to show that service was valid.  Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993); Jumpp v. Jerkins, 2010 U.S. Dist. LEXIS 17765, at *18 (D.N.J. Mar 1, 2010).  If service of process was not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory.  See Fed. R. Civ. P. 12(b)(5); Dimensional Communications, Inc., 218 F. Supp. 2d at 655.

Service upon foreign defendants is governed by Rule 4(f) which requires that service be made in the manner prescribed by the Hague Convention or by foreign law.  Fed. R. Civ. P. 4(f).  Rule 4(h)(1) governs service of process on domestic and foreign corporations, when the corporation is served in the Untied States.

**III. ANALYSIS**

In this motion, Sun India argues that Cephalon cannot meet its burden to prove sufficient service of process under Fed. R. Civ. P. 12(b)(5), and, therefore, that the Complaint against it must be dismissed.  Specifically, Sun India argues that Cephalon's attempt to serve Sun India at Sun USA's office in New Jersey was improper.  Moreover, Sun India contends that because it is

3

a foreign corporation located in India, Plaintiff was required to serve it in accordance with the Hague Convention.

In response, Plaintiff contends that: (1) Sun India was properly served at Sun USA's Cranbury, New Jersey facility; (2) Cephalon has commenced service under the Hague convention; and (3) Cephalon has attempted to serve Caraco, a subsidiary of Sun India, but a corporate attorney at Caraco refused service. In addition, Plaintiff argues that under Fed. R. Civ. P. 4(f)(3), this Court is authorized to permit service upon a foreign entity by any means not prohibited by international agreement.

Generally speaking, "[c]ourts cannot exercise jurisdiction over a party that has not been properly served in conformity with Rule 4 of the Federal Rules of Civil Procedure." Reddy v. MedQuist, Inc., No. 06-4410, 2009 WL 2413673, at *2 (D.N.J Aug., 4 2009). Where there is a question as to the validity of service, the burden of proof of service lies on "the party asserting the validity of service." Grand Entm't Group v. Star Media Sales, 988 F.2d 476, 488 (3d Cir.1993).

In relevant part, Fed. R. Civ. P. 4(f) provides the acceptable means of serving individuals in a foreign country: "Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f). Similarly, New Jersey court rules provide for "personal service outside the territorial jurisdiction of the United States, in accordance with any governing international treaty or convention to the extent required thereby, and if none, in the same manner as if service were

made within the United States. . . ." N.J. Ct. R. 4:4-4(b)(B).

In this matter, Sun India is an Indian corporation and India is a signatory to the Hague Convention. Thus, service upon Sun India must be effected in accordance with the Hague Convention. Specifically, and in relevant part, the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters became effective between the United States and India on August 1, 2007 and requires that "service of process on . . . entities located in India . . . should be sent to the Indian Central Authority for that Convention." Moreover, "India has made a reservation to the Convention objecting to service of process by mail, or directly through judicial officers in India without the involvement of the Central Authority." India Judicial Assistance, available at http://travel.state.gov/law/judicial/judicial_2811.html. Thus, it is clear, pursuant to the Hague Convention, that Plaintiff was required to serve Sun India by serving process on the Indian Central Authority for the Hague Convention. In that regard, it is undisputed that while Plaintiff has initiated service under the Hague Convention, Plaintiff has not completed service in accordance with the Hague Convention. Thus, Plaintiff has not completed service in accordance with state and federal law.

Despite this failure, Plaintiff attempts to argue that Sun India was properly served at Sun USA's Cranbury location. Specifically, Plaintiff contends, without citing any case law in support, that because Sun India purports to own the Cranbury facility and because Sun India's ANDA agent, Caraco, is allegedly running its business out of the Cranbury facility, serving a copy of the summons and complaint upon Sun India at Sun USA's Cranbury facility was proper under Federal and New Jersey law. In other words, Plaintiff contends that "given the blurred

5

distinctions between Sun India, Sun USA, and Caraco," Pl's Br. in Opposition to 12(b)(5) Motion at 3, service on Sun USA suffices to establish service on and jurisdiction over Sun India.

While neither party has cited to any case law, it appears that some New Jersey courts have found that "[u]nder New Jersey law, service on a wholly owned subsidiary confers jurisdiction over the foreign parent only if the subsidiary is an alter ego or agent of the parent." Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)(citing Patent Incentives, Inc. v. Seiko Epson, Corp., Civ. No. 88–1407, 1988 WL 92460 (D.N.J. Sept.6, 1988) (citing Akzona Inc. v. E.I. DuPont De Nemours & Co., 607 F.Supp. 227, 236–37 (D. Del.1984)). To determine if a subsidiary is acting as an agent of the parent, courts consider: (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent, Seltzer v. I.C. Optics, Ltd., 339 F.Supp.2d 601, 609–10 (D.N.J.2004); see also Cintron v. W & D Machinery, Co., Inc., 182 N.J.Super. 126, 440 A.2d 76, 80 (Law Div.1981) (stating that a subsidiary that is a "mere instrumentality of the foreign corporation ... should be held to occupy the status of a managing agent of the foreign corporation within the meaning of statutory provisions authorizing service of process upon a managing agent of a corporation"); (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies. Carfagno v. Ace, Ltd., Civ. No. 04–6184, 2005 WL 1523530, * 6 (D.N.J. June 28, 2005) (quoting Pfundstein v. Omnicom Group Inc., 285 N.J.Super. 245, 666 A.2d 1013, 1016–17 (App.Div.1995)).

For example, in Dewey, the court found that the relationship between Volkswagen of America ("VWOA") and Volkswagen of Germany ("VWOG") was "so close that VWOA

operates as an agent of VWAG by law for the purpose of service of process." 558 F. Supp. 2d at 513.  There, Plaintiff submitted an affidavit demonstrating that: (1) VWAG owns 100% of the outstanding stock of VWOA; (2) that VWOA is the sole authorized U.S. importer and distributor of cars manufactured by VWAG; (3) that VWAG has the power to appoint VWOA's President and CEO; (4) the Importer Agreement governing the relationship between VWAG and VWOA shows that VWAG has substantial control of VWOA's activities including not only matters related to the importation of VWAG vehicles, but the marketing, distribution and sales of vehicles, the proliferation of dealerships, the training of dealership personnel and terms of payment between customers and VWOA.  As a result, the court held that "it is apparent that VWAG cannot do business in the United States absent its wholly owned subsidiary....[and that] the VWOA is an agent of VWAG by law for service of process because 'the subsidiary is doing business in the forum that would otherwise have to be done in the forum by the parent.'" Id. at 514.

Here, Plaintiff apparently contends that service on Sun USA suffices to establish service on Sun India because: (1) Sun India purchased the Cranbury facility in 2005 and the purchase money for this facility came from India; (2) Sun India lists the New Jersey location as one of its formulation plants; (3) Sun India and Sun USA share one director; and (4) Sun India's ANDA agent, Caraco (a Michigan Corporation), may be using the Cranbury facility.[1]  Cephalon Rep. Br. at 8-10.  Unlike in Dewey, however, Plaintiff has not provided an affidavit demonstrating that Sun India has substantial control over Sun USA's operations or sales; that Sun India has the

---

[1] In that regard, the Court notes that during a conference call with the parties on December 5, 2011, counsel for Defendants represented that Caraco was not operating out of the Cranbury, New Jersey facility.

7

power to appoint the president of Sun India; or that Sun USA is "doing business in the forum that would otherwise have to be done in the forum by the parent." Absent such a record, the Court finds that service on Sun USA is not sufficient to establish service on Sun India by virtue of an alter ego theory.

Even assuming, however, that service on Sun USA was proper to establish service on Sun India, Plaintiff has not established service on an officer or agent authorized to accept service on behalf of Sun India as required by the Federal and State Rules. Federal Rule of Civil Procedure 4(h)(a)(B) authorizes service of process on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant. . . ." Fed. R.Civ. P. 4(h)(1). Service of process can also be effected upon a foreign corporation pursuant to New Jersey Court Rule 4:4-4(a)(6). See Fed. R. Civ. P. 4(h)(1)(A) (permitting a foreign corporation to be served in the same manner prescribed for individuals under Federal Rule 4(e)(1)); Fed. R. Civ. P. 4(e)(1) (allowing an individual to be served "following state law for serving a summons in action brought in courts of general jurisdiction in the state where the district court is located or where service is made"). New Jersey law of service allows service of process on "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof." N.J. Ct. R. 4:4-4. New Jersey law goes further than Rule 4(h)(1)(B). It provides that "[i]f service cannot be made on any of these persons," service of process may be made "on a person at the principal place of business of the corporation in this

8

State in charge thereof," and "[i]f there is no principal place of business with New Jersey," service may be made "on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law . . . ." N.J. Ct. R. 4:4-4(a)(6).  Generally, the "mere acceptance of service by an employee, other than an officer, director, trustee or managing or general agent, does not establish that the employee was authorized to [accept service]." West v. American Honda Motor Co., 2008 U.S. Dist. LEXIS 72343, at *5 (D.N.J. Aug. 28, 2008); Lee v. Genuardi's Family Mkts., L.P., 2010 U.S. Dist. LEXIS 72213, at *11 (D.N.J. Jul., 19, 2010); Zoning Bd. of Adjustment of Sparta Tp. v. Service Elec. Cable Television of New Jersey, Inc., 198 N.J. Super. 370 (App. Div. 1985); Jameson v. Great Atlantic and Pacific Tea Co., 363 N.J. Super. 419 (App. Div. 2003).  "[I]n the absence of circumstances which clearly show that [an agency agreement] was intended by the parties, authorization to accept service of process on behalf of a corporation . . . would not be deemed to exist." Zoning Bd. of Adjustment of Sparta, 198 N.J. Super. at 377 (quotations and citations omitted).  Plaintiff has the burden of showing that an alleged agent has specific authority, express or implied, for the receipt of process. Id.

Applied here, Plaintiff served the summons and complaint directed to both Sun India and Sun USA on Tracy Charben, Executive Assistant at Sun USA.  However, Plaintiff has not alleged or established that Ms. Charben falls within a category of people authorized to accept service on behalf of either Sun India or Sun USA.  Indeed, even if, as an executive assistant at Sun USA, Ms. Charben was authorized to accept service on behalf of Sun USA, nothing demonstrates that she was an employee of Sun India nor authorized to accept service on behalf of Sun India.  Thus, Plaintiff has not met its burden to establish that Ms. Charben had the authority

to accept service on behalf of Sun India, and, therefore, the Court finds that service on Ms. Charben at Sun USA was not proper to effectuate service on Sun India.

Finally, Plaintiff contends that this Court should authorize service on Sun India pursuant to Fed. R. Civ. P. 4(f)(3). Specifically, Plaintiff requests that this Court authorize service on Sun India through service on its outside counsel. In response, Defendant argues that Plaintiff has not established circumstances to warrant reliance on Rule 4(f)(3). The Court agrees. For the reasons below, and in the absence of Plaintiff's "due diligence" in attempting to serve Sun India n India, the Court will not authorize service under Rule 4(f)(3).

Rule 4(f) provides the acceptable means of serving individuals in a foreign country: "Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice. . . (3) by other means not prohibited by international agreement, as the court orders." Fed.R.Civ.P. 4. Thus, according to the plaint text of the Rule, Rule 4(f) provides that a party may use an alternative means to effect service if two conditions are met: (1) the party obtains the permission of the court, and (2) an international agreement does not otherwise prohibit the means of service approved. See Fed.R.Civ.P. 4(f)(3). Indeed, the current text of the rule requires that a party first use "any internationally agreed means of service that is reasonably calculated to give notice," citing the method of service provided by the Hague Service Convention as an example. Fed.R.Civ.P. 4(f)(1); but see Rio Props. v. Rio Int'l Interlink,

10

284 F.3d 1007, 1015 (9th Cir.2002)(interpreting a prior version of the rule in which the conjunction "or" appeared after subsection (1) and finding that the "court directed service is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)").  Thus, it is only when "there is no internationally agreed means" or "an international agreement allows but does not specify [alternative] means" that a party may effect service by the alternatives in subsections (2) and (3). See Fed. R.Civ.P. 4(f)(2). When subsections (2) and (3) apply, there is no hierarchy of service methods that a party must employ, as demonstrated by the use of the conjunction "or." See Fed.R.Civ.P. 4(f)(2)-(3).  All alternative methods stand on an equal footing; and parties, along with the court, are free to choose any method as long as it is "reasonably calculated to give notice." Fed.R.Civ.P. 4(f)(2).

In the instant matter, the Hague Convention clearly applies.  Thus, Plaintiff was required to serve Sun India pursuant to the Hague convention.  It is undisputed that Plaintiff has not served Sun India in compliance with the Hague convention as required by Fed. R. Civ. P.4, thus this Court will not permit alternative service as set forth in Rule 4(f)(3).

Moreover, the Court notes that although at least one court in this district has permitted service on an Indian corporation via service on outside counsel, the facts before me are easily distinguishable from those set forth in Marlabs Inc. v. Achen Jakher, Civ. A. No. 07-4074, 1010 WL 1644041 (D.N.J. April 22, 2010).  In Marlabs, the court permitted service on defense counsel under Rule 4(f)(3).  There, the court found that plaintiff had attempted to serve defendant in accordance with the Hague Convention.  Specifically, "[d]uring the period of 2007-2009, Plaintiff hired a process server in the United States and retained an attorney in India in an effort to properly serve Defendant. Although Plaintiff's process server [a properly authorized process

server under Indian law] made several attempts to serve Defendant at [his workplace], he was unable to directly communicate with Defendant.  The process server, accordingly, affixed the Summons and Complaint to a conspicuous place in the [Defendant's workplace.]" Id. at *2. Moreover, the court noted that although defendant argued that he did not work at that location where Plaintiff attempted to serve him, "[w]hat is clear, however, is that Defendant was in contact with [personnel from that workplace], as he was immediately contacted by a company employee. . .when the process server arrived at [that location] with the Summons. . . . In any case, the court observes that Plaintiff made numerous attempts to locate and serve Defendant." Id.

Conversely, in the instant matter, despite knowing that Defendant intended to launch a generic version of Gabitril since 2005, Plaintiff waited until November 3, 2011, more than 6 years after learning of Defendants' ANDA and nearly two months after filing the Complaint to initiate service on Sun India in accordance with the Hague Convention.  Thus, unlike Marlabs, where Plaintiff hired an Indian attorney and Indian process server to effect service on Defendant, Plaintiff has not made numerous attempts to locate and serve Defendant in accordance with the Hague convention.  Instead, Plaintiff attempted to improperly serve Defendant at a United States subsidiary and only initiated service in compliance with the Hague two months after filing the Complaint and Motion for Preliminary Injunction and Temporary Restraining Order with this Court.  For these reasons, the court finds that service on Sun India is insufficient and will grant Sun India's motion pursuant to Fed. R. Civ. P. 12(b)(5).

**IV. CONCLUSION**

For the foregoing reasons, Sun India's Motion to Dismiss for Insufficient Service of Process under Fed. R. Civ. P. 12(b)(5) is DENIED; however, the Court will exercise its discretion under Rule 12(b)(5) to QUASH service on Sun India in New Jersey.[2]

Dated: December 7, 2011                    /s/ Freda L. Wolfson
                                           Freda L. Wolfson, U.S.D.J.

---

[2] The Court entered an Order on December 5, 2011 concerning the relief discussed in this Opinion.  Thus, the Court will not enter an additional Order and will, instead, rely on the Order entered on December 5, 2011.