NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CEPHALON, INC.,

    Plaintiff,

v.

SUN PHARMACEUTICAL INDUSTRIES, INC., et al.,

    Defendants.

Civil Action No.: 11-5474 (FLW)

MEMORANDUM & ORDER

This matter comes before the Court on Plaintiff Cephalon, Inc.'s ("Plaintiff" or "Cephalon") Motion for entry of an order (1) preventing disclosure of confidential information; (2) barring Defendants from communicating with or representing Scott E. Mcgraw, Ph.D. and using Dr. McGraw as an expert witness; and (3) compelling Defendants to answer the three inquiries made by Cephalon on April 11, 2013[1] [dkt. no. 236]. Defendants Sun Pharmaceuticals, Inc. and Caraco Pharmaceutical Laboratories Ltd. (collectively, "Sun") opposed Cephalon's Motion [dkt. no. 243]. Oral argument was conducted on July 23, 2013 [dkt. no. 254]. The Court has considered the submissions and arguments of the Parties and, for the reasons set forth herein, Cephalon's Motion is **DENIED**.

**I.**

Dr. McGraw is a former employee of Cephalon's Danish predecessor-in-interest, Novo Nordisk A/S ("Novo"). While at Novo, Dr. McGraw was involved in the development of the

---

[1] The third of Cephalon's requests has been resolved as discussed below. This aspect of Cephalon's Motion is therefore **MOOT**.

patent-at-issue, the '951 patent. Cephalon claims that it is the successor-in-interest to all of the contractual obligations between Dr. McGraw and Novo. Most germane to the issue here, Cephalon claims Dr. McGraw signed a confidentiality agreement while at Novo which prevents him from disclosing any confidential information acquired during the course of his employment.

On March 25, 2013, the parties served their First Amended Initial Disclosures. Sun identified Dr. McGraw as an individual likely to have discoverable information. Sun further stated that "any contact with Dr. McGraw needed to be made through counsel of record for [Sun]." A. Lite Decl. at Ex. A. Thereafter, the parties met and conferred regarding Cephalon's objections to Sun's representation of Dr. McGraw. The meet-and-confer ultimately failed, and this Motion followed.

**II.**

The Court begins by noting the difficulty it has in framing Cephalon's request. Cephalon has explicitly stated that its Motion is not to disqualify Dr. McGraw. And, despite what might otherwise be a valid chain of ownership between Novo and Cephalon, the Court cannot see any basis to enforce the confidentiality agreement between Novo and Dr. McGraw against Sun.

For its part, Cephalon's attempts to distill the issue in its Reply Brief:

> The only issue before the Court is whether any communication between Defendants and Dr. McGraw would violate Dr. McGraw's legal and contractual duty of confidentiality, which is owed to Cephalon per the License, Product and Patent Assignment Agreements.

Pl.'s Reply at 2. However, as previously noted, the Court cannot find (and Cephalon has not articulated) any legal basis upon which the Court could enforce the agreement against *Sun*. Nor has Cephalon articulated a valid basis to grant its Motion under New Jersey's Rules of Professional conduct. That is to say, there is no indication that Sun's attorneys violated any Rule of Professional Conduct.

On April 11, 2013, following the Court's suggestion, Cephalon sent a letter to Sun which contained three questions regarding the circumstances relating to Sun's representation of Dr. McGraw. A. Lite Decl. at Ex. C. The questions were aimed at discovering whether Sun's attorneys had engaged in any wrongdoing. See id. Specifically, Cephalon asked Sun to identify (1) the date Defendants first contacted Dr. McGraw and how many contacts have been made since that date; (2) who made the first contact with Dr. McGraw and who has communicated with him since; and (3) what was said to Dr. McGraw prior to his decision to allow Sun to represent him. Id. Sun objected to Cephalon's questions as seeking privileged information, but submitted its responses to the Court for in camera review.

After reviewing Sun's responses to the April 11, 2013 letter, the Court concludes that Sun's attorneys have not violated any Rule of Professional Conduct.[2] Sun first contacted Dr. McGraw in March of 2013. It further appears that, in the course of Sun's communications with Dr. McGraw, Sun adequately disclosed its role in this litigation (i.e., that Sun was adverse to Novo-successor-in-interest Cephalon). Moreover, Dr. McGraw informed Sun that he was not represented and was willing work with Sun. As a result, the Court cannot discern any basis to conclude that Sun's attorneys violated either Rule 4.2 or 4.3.

Finally, the Court notes that Cephalon is not without remedies. If Cephalon believes Dr. McGraw has violated his confidentiality agreement with Novo, it is free to file a separate action to enforce that agreement against Dr. McGraw. Cephalon is likewise free to file a motion to disqualify Dr. McGraw.

---

[2] Cephalon relies on NJRPC 4.2 and 4.3. Broadly speaking, these Rules provide guidelines for communicating with persons who are either represented by counsel and/or who are employed or were formerly employed by an organization. See id.

**III.**

The Court having considered the submissions and arguments of counsel, and for the reasons stated above;

**IT IS** on this 29th day of August, 2013,

**ORDERED** that Cephalon's Motion [dkt. no. 236] is **DENIED**.

<u>**s/ Douglas E. Arpert**</u>
**DOUGLAS E. ARPERT, U.S.M.J.**